**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-22428-CIV-ALTONAGA**

**RAUL ALIAGA QUINTERO**,

      Petitioner,

v.

**FIELD OFFICE DIRECTOR**
**OF MIAMI ICE FIELD OFFICE**, *et al.*,

      Respondents.

_____/

## ORDER

    **THIS CAUSE** came before the Court on Petitioner, Raul Aliaga Quintero's Amended Petition for a Writ of Habeas Corpus [Under 28 U.S.C. Section 2241] [ECF No. 4]. The Amended Petition challenges Petitioner's continued detention by the United States Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") under an expedited removal order. (*See generally* Am. Pet.). The Government filed a Response [ECF No. 23], to which Petitioner filed a Traverse [ECF No. 24]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Amended Petition is denied.

## I.  BACKGROUND

    Petitioner, a Cuban national, entered the United States on March 30, 2022, without inspection. (*See* Am. Pet. ¶¶ 1, 22; Resp., Ex. A, Record of Deportable/Inadmissible Alien ("Petitioner Record") [ECF No. 23-1] 4).[1] That same day, a U.S. Customs and Border Protection

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

("CBP") agent arrested him.  (*See* Am Pet. ¶¶ 2, 22).  Petitioner admitted he lacked lawful immigration documentation, and CBP deemed him inadmissible.  (*See* Pet'r Record 4).

On April 5, 2022, DHS issued Petitioner a Notice to Appear ("NTA") [ECF No. 23-2], charging him as removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), Pub. L. No. 82-414, 66 Stat. 163 (1952) (codified as amended in scattered sections of 8 U.S.C.).  (*See* Am. Pet. ¶ 23; NTA 2).  Petitioner was then promptly released on an I-220A Order of Release on Recognizance, pending further immigration proceedings.  (*See* Am. Pet. ¶¶ 2, 24; Pet'r Record 5; *see also* Resp., Ex. C, Order of Release on Recognizance ("I-220A Form") [ECF No. 23-3] 2).

For the next three years, Petitioner remained at liberty while his removal proceedings progressed.  (*See* Am. Pet. ¶ 25).  During that time, he appeared for multiple hearings at the Miami Immigration Court — part of the U.S. Department of Justice's Executive Office for Immigration Review — and applied for asylum.  (*See id.* ¶ 26).  In April 2023, Petitioner filed a motion to terminate his removal case, arguing that he was eligible to adjust status under the Cuban Adjustment Act ("CAA") based on his prior release from DHS custody, which he characterized as parole.  (*See* Resp., Ex. E, Resp't's Mot. to Terminate [ECF No. 23-5] 4–5).  On April 20, 2023,[2] an immigration judge denied the motion, finding that Petitioner did not appear eligible to adjust status with United States Citizenship and Immigration Services ("USCIS").  (*See* Resp., Ex. F, Apr. 20, 2023 Order ("Apr. 20 Order") [ECF No. 23-6] 2).

---

[2] Respondents state that Petitioner's motion to terminate and the resulting order were dated April 19 and 20, 2025, respectively.  (*See* Resp. 3; Resp., Ex. G, Jonathan Ruiz Decl. [ECF No. 23-7] ¶ 9).  The exhibits themselves, however, are dated April 19 and 20, 2023.  (*See generally* Resp., Ex. E, Resp't's Mot. to Terminate; *see also* Apr. 20 Order 2).  Where the record conflicts with a party's characterization of it, the exhibit generally governs.  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

On May 27, 2025, Petitioner appeared for a master calendar hearing at the Miami Immigration Court. (*See* Am. Pet. ¶ 27; Jonathan Ruiz Decl. [ECF No. 23-7] ¶ 10). At the hearing, DHS moved to dismiss the section 240 removal proceedings under 8 C.F.R. section 239.2(a)(7), which permits dismissal when "[c]ircumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government." *Id.* (alteration added). The immigration judge granted DHS's request. (*See* Am. Pet. ¶ 27; Ruiz Decl. ¶ 10; Resp., Ex. H, May 27, 2025 Order [ECF No. 23-8] 2).[3] As Petitioner stepped out of the courtroom, ICE officers arrested him and informed him he would face expedited removal from the United States under section 235(b)(1) of the INA. (*See* Am. Pet. ¶ 28; Resp. 3).

Petitioner was initially processed at the ICE field office in Miramar, Florida, before being transferred to the Krome North Service Processing Center ("Krome"). (*See* Am. Pet. ¶ 29; Resp., Ex. I, Record of Sworn Statement [ECF No. 23-9] 2). On June 9, 2025, Enforcement and Removal Operations ("ERO") — a division of ICE — served Petitioner with a Notice and Order of Expedited Removal [ECF No. 23-11], charging him with inadmissibility under section 212(a)(7)(A)(i)(I) of the INA for lacking valid entry documents. (*See* Resp., Ex. K, Notice & Order of Expedited Removal 2–3). He refused to sign the accompanying forms. (*See* Resp., Ex. L, Form I-867 A/B [ECF No. 23-12] 4). ICE then transferred him to the Broward Transitional Center in Pompano Beach, Florida, where he remains detained. (*See* Am. Pet. ¶ 29; Resp. 4).

Petitioner now seeks a writ of habeas corpus under 28 U.S.C. section 2241, challenging the legality of his detention and expedited removal. (*See* Am. Pet. 21; *see also* Traverse 2). He contends the DHS lacked statutory authority to place him in expedited removal proceedings more than two years after his entry, and that he is statutorily exempt from such proceedings as a parolee.

---

[3] On June 4, 2025, Petitioner appealed the immigration judge's May 27, 2025 dismissal order. (*See* Ruiz Decl. ¶ 12; Resp., Ex. J, Filing Receipt for Appeal . . . [ECF No. 23-10] 2).

(*See generally* Am. Pet.; Traverse).  He further asserts that the INA's jurisdiction-stripping provisions, as applied to him, violate the Suspension Clause of the U.S. Constitution. (*See generally* Am. Pet.; Traverse).  Respondents move to dismiss the Amended Petition, asserting that the Court lacks jurisdiction to review expedited removal orders and that Petitioner's constitutional claim is foreclosed by binding precedent.  (*See generally* Resp.).  The Court agrees with Respondents.

## II.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction, empowered to hear only those cases authorized by the Constitution and Congress.  *See* U.S. Const. Art. III; 28 U.S.C. § 1331; *Keene Corp. v. United States*, 508 U.S. 200, 207–08 (1993).  Nowhere is this principle more rigorously applied than in immigration cases, where Congress has plenary authority to define the contours of judicial review.  *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (citations omitted).

With the enactment of the REAL ID Act in 2005, Congress stripped federal district courts of jurisdiction over most challenges to removal orders, channeling such review exclusively to the courts of appeals.  *See* Pub. L. No. 109–13, 119 Stat. 231, 310–11 (2005); 8 U.S.C. § 1252(a)(5). The statute makes plain that, "[n]otwithstanding any other provision of law . . . including [28 U.S.C.] section 2241[,]" review of a removal order must be sought via petition for review in the appropriate court of appeals.  8 U.S.C. § 1252(a)(5) (alterations added).

Congress carved out only a narrow exception to that general rule for certain expedited removal orders, which may be reviewed in limited respects by a district court through habeas corpus.  *See id.* § 1252(e)(2).  But even that review is confined to three tightly circumscribed factual questions: (1) whether the petitioner is an alien; (2) whether the petitioner was in fact ordered removed under section 1225(b)(1); and whether the petitioner can prove he is a lawful

permanent resident, was admitted as a refugee, or was granted asylum. *See id.* §§ 1225(e)(2)(A)–(C).

Outside of that narrow window, federal courts may not review "any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to [8 U.S.C.] section 1225(b)(1)[.]" *Id.* § 1252(a)(2)(A)(i) (alterations added). And courts may not "enter declaratory, injunctive, or other equitable relief" with respect to such orders. *Id.* § 1252(e)(1)(A). In sum, unless a habeas petitioner falls within this narrow class of reviewable claims, a district court's jurisdiction is foreclosed by statute.

But that is not the end of the matter. Where statutory bars to jurisdiction would entirely preclude habeas review of executive detention, courts must confront the constitutional floor imposed by the Suspension Clause. *See* U.S. Const. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended . . . ." (alteration added)); *Boumediene v. Bush*, 553 U.S. 723, 783 (2008) (holding that "the writ must be effective" and available where no adequate substitute exists). In certain circumstances, including some arising under the expedited removal regime, the Suspension Clause requires access to the writ even when a statute purports to deny it. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 300–01 (2001); *Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 177 (3d Cir. 2018).

At bottom, then, while the REAL ID Act and 8 U.S.C. section 1252(e) sharply limit the role of district courts in reviewing expedited removal orders, courts must still determine whether a petitioner's claims fall outside the scope of statutory review and, if so, whether the Suspension Clause permits jurisdiction to nonetheless lie.

## III. DISCUSSION

Petitioner concedes what the statutory text makes plain: under 8 U.S.C. section 1252(a)(5), the Court lacks jurisdiction to review removal orders, including those issued through the expedited removal process set forth in section 1225(b)(1). (*See* Traverse 1–2, 5). He further acknowledges that none of the narrow exceptions to that jurisdictional bar — allowing review of whether he is an alien, whether he was ordered removed, or whether he possesses a protected immigration status, *see* 8 U.S.C. §§ 1225(e)(2)(A)–(C) — applies in his case (*see* Traverse 1–2, 5).

What Petitioner argues instead is that this statutory scheme, as applied to him, violates the Suspension Clause by depriving him of any meaningful opportunity to contest his detention and removal through habeas corpus. (*See id.* 1–8). The argument is not without precedent, but it is without merit here. To support his claim, Petitioner cites three cases: *Osorio-Martinez*, 893 F.3d 153; *Ibrahim v. Acosta*, No. 17-cv-24574, 2018 WL 582520 (S.D. Fla. Jan. 26, 2018); and *Agarwal v. Lynch*, 610 F. Supp. 3d 990 (E.D. Mich. 2022). These authorities are unavailing.

In *Ibrahim*, the court found that it retained limited jurisdiction under the Suspension Clause where the government's own misconduct — including an allegedly botched deportation flight — exacerbated risks to the petitioners upon return to their home country. 2018 WL 582520, at *6. The court stressed that its ruling was premised on the "unique circumstances" of the case. (*Id.*). Nothing comparable exists here. ICE's decision to initiate expedited removal proceedings after the dismissal of Petitioner's section 240 case may have come as a surprise, but it is not illegal, let alone extraordinary. (Resp. 4–5). Mere physical presence in the United States — without more — does not entitle a petitioner to Suspension Clause relief from an expedited removal order. *See, e.g.*, *Cabrera v. U.S. Dep't of Homeland Sec.*, No. 24-cv-3079, 2025 WL 1009120 (7th Cir. Apr.

6

4, 2025) (affirming dismissal of petition challenging expedited removal despite the petitioner's claim of two years' physical presence).

Petitioner's reliance on *Osorio-Martinez* and *Agarwal* — both non-binding, out-of-circuit cases — is likewise misplaced.  In *Osorio-Martinez*, the Third Circuit found that the Suspension Clause required some form of judicial review for children who had been granted Special Immigrant Juvenile ("SIJ") status — a statutory designation reflecting Congress's intent to provide a pathway to lawful permanent residence.  *See* 893 F.3d at 166.  The court emphasized the petitioners' strong legal ties to the United States and their "meaningful and substantial connection" to the country.  *Id.* at 175.  Similarly, in *Agarwal*, the district court found Suspension Clause review warranted where the petitioner developed substantial connections with the United States, having lived here lawfully for nearly a decade and having reentered with a valid F-2 visa.  610 F. Supp. 3d at 1004.

By contrast, Petitioner was never lawfully admitted to the United States; has not been granted SIJ status, parole, or any other protected classification; and has no pending application for relief.  His claim to jurisdiction rests solely on his physical presence in the country for a little over three years following his release on an I-220A form.  (*See* Traverse 7–8).  But that form does not confer parole or any other immigration benefit; it merely reflects a decision to release an individual from custody pending further removal proceedings.  (*See* I-220A Form 2; Resp. 8–9 (citations omitted)).  Nor does Petitioner's time in the United States strengthen his claim to relief.  The immigration judge already found him ineligible to adjust status under the CAA.  (*See* Apr. 20 Order 2).

In short, Petitioner lacks any legal, procedural, or equitable basis that might warrant Suspension Clause review.  More fundamentally, Petitioner identifies no authority — statutory or constitutional — that converts the mere passage of time after an unlawful entry into a basis for

judicial review of an otherwise unreviewable expedited removal order. To the contrary, the Supreme Court has, at the very least, strongly suggested the Suspension Clause does not guarantee such review. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 122–38 (2020).

Accordingly, it is

**ORDERED AND ADJUDGED** that Petitioner, Raul Aliago Quintero's Amended Petition for a Writ of Habeas Corpus [Under 28 U.S.C. Section 2241] **[ECF No. 4]** is **DISMISSED without prejudice**.

**DONE AND ORDERED** in Miami, Florida, this 18th day of June, 2025.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record